UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AURORA HEALTH CARE INC,

    Plaintiff,

v.                                                                  Case No. 22-cv-1159-bhl

BLUE CROSS BLUE SHIELD OF WISCONSIN,

    Defendant.

---

### ORDER DENYING MOTION TO DISMISS

---

    Plaintiff Aurora Health Care, Inc. (Aurora) alleges that Defendant Blue Cross Blue Shield of Wisconsin (Blue Cross) has refused to compensate Aurora timely for services rendered under the parties' Physician-Hospital Organization (PHO) Agreement. Blue Cross has moved to dismiss the complaint for failure to state a claim or, in the alternative, asks the Court to order Aurora to provide a more definite statement. Because Aurora's claims are adequately pleaded, Blue Cross's motion will be denied.

### FACTUAL BACKGROUND[1]

    Aurora and Blue Cross are parties to a PHO Agreement, pursuant to which Aurora agrees to provide services at a discounted rate in exchange for Blue Cross's promise to pay Aurora's claims in a timely manner. (ECF No. 1-1 ¶¶10-11.) The Agreement also requires Blue Cross to pay a 7.5% interest rate on any claims that remain unpaid after 30 days. (*Id.* ¶12.) Consistent with this arrangement, between 2020 and 2021, Aurora and its affiliated medical providers delivered medical services to tens of thousands of Blue Cross insureds. (*Id.* ¶13.) But rather than remit payment for those services in a timely fashion, Blue Cross engaged in post-service claims practices and tactics designed to delay remuneration. (*Id.* ¶14.) In fact, at the time Aurora filed this case, at least 25,000 outstanding claims were unpaid and more than 150 days overdue. (*Id.* ¶15.) In total, this amounts to around $83 million in unsatisfied claims. (*Id.* ¶44.) And that number does not include interest, which Blue Cross has also refused to pay. (*Id.* ¶50.)

---

[1] These facts are derived from Aurora's Complaint, (ECF No. 1-1), the allegations in which are presumed true for purposes of the motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007).

# JURISDICTION

Before analyzing Blue Cross's motion, the Court has an obligation to confirm that it has jurisdiction. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020); *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). This case began when Aurora filed a complaint in Milwaukee County Circuit Court. (ECF No. 1-1.) Blue Cross timely removed the matter to federal court, citing 28 U.S.C. § 1442(a)(1). (ECF No. 1.) This statute "permits removal to federal court of an action against 'the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office.'" *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 589 (7th Cir. 2016) (quoting 28 U.S.C. § 1442(a)(1)).

The Seventh Circuit has explained that jurisdiction under the "federal officer removal" statute "is appropriate when 'the defendant (1) is a person within the meaning of the statute, (2) is acting under the United States, its agencies, or its officers, (3) is acting under color of federal authority, and (4) has a colorable federal defense.'" *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) (quoting *Betzner v. Boeing Co.*, 910 F.3d 1010, 1015 (7th Cir. 2018)). The removing party bears the burden of establishing federal jurisdiction. *Betzner*, 910 F.3d at 1014. But federal courts' typical presumption against removal in diversity jurisdiction cases "does not extend to the federal officer removal statute." *Id.* Instead, this removal statute must be "liberally construe[d]." *Id.*

At first blush, exercising federal jurisdiction over this action seems odd. The claims are all based on state law and the parties are not diverse. To the extent there are federal issues, only a handful of the more-than-25,000 alleged violations involve claims under a federal benefit plan. (*See* ECF No. 1-13 ¶9.) Yet, as noted above, federal officer removal jurisdiction is unique, embracing a policy favoring removal.

Under the Seventh Circuit standard, the first question is whether the removing defendant is a "person" within the meaning of Section 1442. *See Ruppel v. CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 2012). Seventh Circuit precedent treats corporations as "person[s]" for purposes of Section 1442. *See Panther Brands*, 827 F.3d at 590. Blue Cross is a corporation, (ECF No. 1-1 ¶6), and, therefore, satisfies the first condition for removal.

The next question is whether the alleged injury occurred while the removing defendant was "acting under" a federal officer. *See Ruppel*, 701 F.3d at 1181. The Supreme Court thoroughly

addressed this requirement in *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007). The Court held that "'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (emphasis in original). And it distinguished between a private entity that is merely highly regulated and one "acting under" a federal officer. "[A] highly regulated firm cannot find a statutory basis for removal [due to the mere] fact of federal regulation alone." *Id.* at 153. Rather, to invoke the federal officer removal statute, "[t]he assistance that private contractors provide federal officers [must go] beyond simple compliance with the law." *Id.* The private contractor must "perform[] a job that, in the absence of a contract . . ., the Government itself would have [] to perform." *Id.* at 154.

In this case, Blue Cross alleges that "some of the patients at issue . . . are enrollees in the Blue Cross Blue Shield Service Benefit Plan . . ., which is one of the federal government's health benefit plans for federal employees and their dependents, and is governed by and created under the Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8901-8914." (ECF No. 1 ¶5.) "The Service Benefit Plan is created by a federal government contract between the United States Office of Personnel Management (OPM) and the Blue Cross and Blue Shield Association." (*Id.* ¶12.) In contracting with OPM, the Blue Cross and Blue Shield Association acts as agent for and on behalf of local Blue Cross and Blue Shield companies (like the defendant here), who administer the Service Benefit Plan in their respective locales. (*Id.* ¶13.) As a carrier, Blue Cross does not collect or retain insurance premiums paid under FEHBA. (*Id.* ¶14j.) Instead, those premiums are deposited into a special letter of credit account within the U.S. Treasury. (*Id.*) Then, when providers like Aurora make claims, carriers like Blue Cross draw from the letter of credit account to deliver payment. (*Id.*)

The Seventh Circuit has never directly addressed whether a carrier like Blue Cross satisfies the "acting under" requirement. The four other circuits that have addressed this issue have all held removal was appropriate in similar factual situations. *See Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (per curiam) (allowing removal where the plaintiff alleged the defendant failed to reimburse it under the Service Benefit Plan because the "plan is governed by a contract negotiated and interpreted by OPM, with which BCBS is compelled to comply); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1234 (8th Cir. 2012) ("FEHBA program carriers contracting with the federal government to provide health care insurance for federal employees are not unrelated

and wholly separate business entities merely doing business in a highly regulated arena, but rather conduct business under the delegation of the federal government."), *abrogated on other grounds by BP P.L.C. v. Mayor and City Council of Balt.*, 141 S. Ct. 1532 (2021); *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017) (holding that "by pursuing subrogation claims [on behalf of OPM], [carriers] go well 'beyond simple compliance with the law'" (quoting *Watson*, 551 U.S. at 153)); *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019) (permitting removal because "OPM enjoys a strong level of guidance and control over Blue Cross").

This case is unique in that the action (or inaction) complained of is Blue Cross's alleged failure to timely transfer premiums from the U.S. Treasury fund to the medical service provider. (*See* ECF No. 1 ¶14j.) But that factual distinction does not obviously move this matter outside the scope of the Supreme Court's "acting under" definition. Transferring funds is a rather rote and ministerial function. But it involves more than mere compliance with federal regulation; it involves delegation of "a job that, in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson*, 551 U.S. at 154. The Court, thus, concludes that Blue Cross satisfies the "acting under" requirement.

The third requirement for federal officer removal jurisdiction is that the removing party must show that it was acting under color of federal authority. *See Ruppel*, 701 F.3d at 1181. "[T]his requirement is distinct from the 'acting under' requirement in the same way a bona fide federal officer could not remove a trespass suit that occurred while he was taking out the garbage." *Id.* In other words, the removing defendant needs to establish that the plaintiff's "'allegations are directed at the relationship' between [the defendant] and the federal government." *Baker*, 962 F.3d at 943 (quoting *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015)). But this is not a heavy burden. In *Baker*, former residents of a low-income housing complex brought a state-court suit against various companies they alleged polluted their community and exposed them to hazardous substances. *Id.* at 940. The defendants removed on the grounds that some of the pollution occurred pursuant to wartime contracts with the federal government. *Id.* at 940-41. The former residents sought remand. The Seventh Circuit recognized that the residents had "raised serious questions about whether the . . . pollution that allegedly caused [their] injuries flowed from [the defendants'] specific wartime production for the federal government or from their more general manufacturing

operations outside those confines." *Id.* at 944.  But the Court held that "those [were] *merits questions* that a federal court should decide." *Id.* (emphasis in original).  It was enough for removal purposes that the alleged pollution occurred while the defendants performed official duties.  *Id.* at 945.  The Court did, however, leave the door open to requiring "a removing defendant to allege more than a de minimis amount of federal transactions to establish jurisdiction."  *Id.*  But it declined to create that requirement in *Baker*, where the defendants "operated under government commands" for between 25 and 35% of the relevant period.  *Id.*

Here, there is no doubt that Aurora's alleged injury occurred while Blue Cross was performing *some* official duties.  According to the Complaint, Blue Cross "has failed to pay more than 25,000 Aurora claims." (ECF No. 1-1 ¶1.)  Yet, of those claims, Blue Cross states that only 250 "are related to patients who are enrollees in the [Service Benefit] Plan." (ECF No. 1-13 ¶9.)  That accounts for fewer than 1% of the alleged violations.  One could certainly read *Baker* as skeptical of this sort of tail-wagging-the-dog style removal.  *Baker* also states, however, that "removal need not be justified as to all claims asserted in the plaintiffs' complaint; rather, the defense need only apply to one claim to remove the case."  962 F.3d at 945 (quoting *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 257 (4th Cir. 2017)).  There is some tension between the Seventh Circuit's floated "de minimis" requirement and this one-claim rule, but in the absence of other guidance, the Court will apply the plain terms of the Seventh Circuit's actual holdings in *Ruppel* and *Baker* to conclude that Blue Cross satisfies the under color of federal authority standard, even though its federal contacts are few.

The final condition for removal is the presence of a colorable federal defense.  *See Ruppel*, 701 F.3d at 1181-82.  Blue Cross asserts three such defenses: (1) sovereign immunity; (2) FEHBA preemption; and (3) that Aurora's state-law claims are displaced by federal common law.  (ECF No. 1 ¶¶23a-c.)  Each was raised and accepted by the Eighth Circuit in *Jacks*.  *See* 701 F.3d at 1235.  They are similarly colorable here.  As a result, Blue Cross satisfies the last requirement for removal.

Based on this analysis and mindful of the trend toward exercising federal officer removal jurisdiction, the Court concludes that while this case is perhaps not the paradigmatic example of what Section 1422(a) envisions, it is properly in federal court.

**LEGAL STANDARD**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the [non-movant's] favor." *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). "To survive a motion to dismiss, the complaint must 'state a claim to relief that is plausible on its face.'" *Roberts*, 817 F.3d at 564 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* at 565 (citing *Iqbal*, 556 U.S. at 678).

**ANALYSIS**

Aurora's Complaint contains four counts: (1) breach of contract, (2) breach of implied duty of good faith and fair dealing, (3) quantum meruit, and (4) unjust enrichment. (ECF No. 1-1 ¶¶97-136.) Blue Cross contends that all four claims fail as a matter of law. In the alternative, it seeks a more definite statement of the claims at issue. Because the Complaint is neither defective nor ambiguous, Blue Cross's motion will be denied.

**I.    Aurora Adequately Pleaded a Breach of Contract Claim.**

Blue Cross first argues that Aurora's complaint improperly leaves Blue Cross to guess at the breach of contract claims because Aurora pleads with insufficient detail. Blue Cross notes that Aurora alleges over 25,000 unpaid claims but provides only four representative examples. As a result, Blue Cross insists it can do nothing "more than speculate which particular [] claims are the subject of this dispute." (ECF No. 3 at 11.) The implication here is that Aurora cannot state a claim for breach of contract without enumerating each and every instance of breach in its Complaint. Neither Wisconsin law nor Federal Rule of Civil Procedure 8 support Aurora's argument.

In Wisconsin, a breach of contract claim has three elements: "(1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages." *Pagoudis v. Keidl*, 988 N.W.2d 606, 612 (Wis. 2023). When in federal court, Rule 8 requires a party asserting a breach of contract claim to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Taken together, these two precepts

establish the extent of Aurora's obligations at the pleading stage. And the Complaint satisfies both.

Aurora identifies a contract between itself and Blue Cross (the PHO Agreement), (ECF No. 1-1 ¶10), describes how Blue Cross breached that contract when it failed to timely pay claims and interest, (*id.* ¶¶11-15), and alleges damages. (*Id.* ¶110.) It also offers four detailed examples of claims that went unpaid, representative of the more-than-25,000 claims that Aurora contends Blue Cross has systemically and deliberately slow-walked, in violation of the PHO Agreement. (*Id.* ¶¶53-96.) That is enough under the "liberal notice pleading regime" operative in federal court. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009). Moreover, Aurora's Complaint already clocks in at 25 pages. (ECF No. 1-1.) That is not excessive, but it is longer than most breach of contract pleadings. Yet if Blue Cross had its way, Aurora would apparently have to produce hundreds of pages more, detailing each of the discrete claims at issue. Such a requirement is incompatible with Rule 8's demand for "a short and plain statement."

None of this is to suggest that Aurora may keep the balance of the claims secret for the duration of the case. Blue Cross will have the right to conduct discovery and explore all 25,000-plus allegedly unpaid claims. At the mere pleading stage, however, the insurer is not entitled to a detailed copy of what will become the record post-discovery.

## II. Aurora Has Also Adequately Pleaded Its Claim for Breach of the Duty of Good Faith and Fair Dealing.

Blue Cross next argues that Aurora's claim for breach of the implied duty of good faith and fair dealing is merely duplicative of its breach of contract claim and should, therefore, be dismissed. But under Wisconsin law, "a party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled." *Foseid v. State Bank of Cross Plains*, 541 N.W.2d 203, 212 (Wis. Ct. App. 1995); *see also E. Capitol Realty LLC v. TSA Stores Inc.*, No. 15-CV-1129, 2016 WL 8578008, at *5 (E.D. Wis. Jan. 12, 2016) (declining to dismiss a claim for breach of the implied covenant of good faith where one party exercised a contractual right not for the "purpose of the provision" but because it wanted out of the agreement). The question is whether the allegations in the Complaint conceive of technical contractual compliance that nevertheless evinces bad faith. *See Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, 759 F. Supp. 2d 1059, 1063 (E.D. Wis. 2010) (dismissing the plaintiff's claim for breach of the implied duty of good faith because it was "essentially a repeat of the breach of contract claim").

Aurora's Complaint adequately describes a scenario whereby Blue Cross improperly denied Aurora the expected benefit of the parties' bargain, even though Blue Cross did not technically breach the contract. For at least some of the claims at issue in this case, Blue Cross had the right to request medical records and other materials to verify eligibility. (ECF No. 1 ¶¶14f.-h.) Aurora believes that it may have wielded these rights to delay payment of clearly valid claims. (ECF No. 1-1 ¶¶114-117.) Under those circumstances, Blue Cross's actions would not run afoul of the contract's plain terms but *might* breach the duty of good faith and fair dealing that Wisconsin law treats as an implied term of every contract. *See In re Estate of Chayka*, 176 N.W.2d 561, 564 n.7 (Wis. 1970). Thus, the Court will not dismiss the claim for breach of the duty of good faith and fair dealing at this stage.

### III. Aurora Has Adequately Pleaded in the Alternative.

Blue Cross also asks the Court to dismiss Aurora's claims for quantum meruit and unjust enrichment because such equitable relief is only available where a contract does not exist, and Aurora clearly alleges the existence of a contract in its Complaint. Blue Cross is correct insofar as it argues that Aurora may not simultaneously recover for breach of contract *and* quantum meruit or unjust enrichment. *See Mohns, Inc. v. BMO Harris Bank N.A.*, 954 N.W.2d 339, 353-54 (Wis. 2021); *Ramsey v. Ellis*, 484 N.W.2d 331, 333 (Wis. 1992). But under Federal Rule of Civil Procedure 8(d), "[a] party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count or . . . in separate ones" and "may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2), (3). Aurora has taken this tack.

The Complaint provides: "If [Blue Cross] contends that the PHO Agreement is unenforceable or for some other reason does not govern the unpaid claims and interest at issue, then Aurora hereby alleges in the alternative that it is entitled to relief . . . based on" quantum meruit and/or unjust enrichment. (ECF No. 1-1 ¶¶121, 129.) Despite this clear invocation of what Rule 8(d) expressly permits, Blue Cross still seeks dismissal. In support, it cites to a case where this Court dismissed claims for equitable relief brought alongside a breach of contract claim where the plaintiff did not allege "that the contracts attached to the complaint were invalid or potentially invalid," nor did "the defendant challenge[] the existence or validity of the agreements." *Harley Marine*, 759 F. Supp. 2d at 1062. But the Seventh Circuit has since clarified that while "[c]laims for breach of contract and unjust enrichment are mutually exclusive . . . a complaint may plead

these two state-law theories in the alternative." *Blanchard & Assocs. v. Lupin Pharms., Inc.*, 900 F.3d 917, 921 (7th Cir. 2018). "[I]nconsistency doesn't matter at the pleading stage." *Id.* And it is not as if allowing Aurora's equitable claims to proceed will create any serious additional burden on Blue Cross. If the parties agree that the PHO Agreement is valid and binding, requests for equitable relief can be easily resolved at summary judgment. For now, the claims survive.

## IV. Blue Cross Is Not Entitled to a More Definite Statement.

A motion for a more definite statement is only appropriate where a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). It is not a vehicle for obtaining more detailed descriptions of already-cognizable allegations. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 849 (7th Cir. 2017). It would be inappropriate for the Court to require Aurora to provide additional information in its pleading simply to satisfy the defendant's curiosity. *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 790 (N.D. Ill. 2010) ("Motions for a more definite statement should not be used to gain additional information, but, particularly in light of our liberal notice pleading requirement, should be granted only when the pleading is so unintelligible that the movant cannot draft a responsive pleading." (quoting *Kingsbury Int'l, Ltd. v. Trade the News, Inc.*, No. 08 C 3110, 2008 WL 4853615, at *2 (N.D. Ill. Oct. 28, 2008))). The Complaint states viable claims that cohere with clearly articulated facts and put Blue Cross on notice of the claims against it. Blue Cross's alternative request for a more definite statement is, therefore, denied.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Blue Cross's Motion to Dismiss, or in the Alternative for a More Definite Statement, ECF No. 2, is **DENIED**.

Dated at Milwaukee, Wisconsin on September 19, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge